## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AMANDA TUCKER, | CIVIL ACTION 1:15-cv-10716 |
| Plaintiff, | |
| v. | COMPLAINT |
| RESIDENTIAL CREDIT SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

### COMPLAINT

NOW COMES the Plaintiff, Amanda Tucker ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Residential Credit Solutions, Inc. ("RCS") and Equifax Information Services, LLC ("Equifax") as follows:

### NATURE OF THE ACTION

1.      This is an action by a consumer seeking actual, statutory, and punitive damages, attorney fees and costs for Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq., the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b)(3)(C), and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2.      This action arises under and is brought pursuant to the FCRA and TCPA. Subject matter jurisdiction is conferred upon this Court pursuant to the FCRA, 15 U.S.C. §1681, and the TCPA, 47 U.S.C. §227, and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States.

3.      The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4.      Venue in this district is proper because each Defendant does business in this district and the all relevant acts or omissions harming Plaintiff occurred in this district.

## PARTIES

5.      Plaintiff is a natural person who resides in the Northern District of Illinois. Plaintiff is a consumer within the meaning of the FCRA as defined by 15 U.S.C. §1681a(c) and (b).

## Equifax

6.      Equifax is a corporation incorporated in the state of Georgia and is authorized to do business in the State of Illinois, and is registered with the Illinois Secretary of State with a registered agent located in Illinois.

7.      Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by 15 U.S.C. §1681a(p).

8.      Equifax is regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

## RCS

9.      RCS is a wholly owned subsidiary of Residential Credit Holdings, LLC. RCS is a Delaware corporation with its principal place of business in Fort Worth, Texas. RCS is in the business of servicing loans across the country, including in the state of Illinois.

## BANKRUPTCY CASE

10.     On July 31, 2013, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 13-30681.

11.     RCS was listed as a secured creditor, with a security interest in the real property commonly known as 32290 Monte Vista Road, Cathedral City, CA 92234 ("subject property"). *See* Exhibit A, a true and correct copy of Plaintiff's Chapter 13 bankruptcy Schedule D.

12.     Equifax was also listed in Plaintiff's bankruptcy Schedule F for notice purposes. *See* Exhibit B, a true and correct copy of Plaintiff's Schedule F.

13.     On August 3, 2013, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiff's Chapter 13 bankruptcy filing. On August 4, 2013, the BNC served Defendants with notice of Plaintiff's Chapter 13 plan. *See* Exhibit C, true and correct copies of the BNC Certificates of Notice establishing service of the Notice of Chapter 13 Bankruptcy Case and Plaintiff's Chapter 13 plan upon Defendants.

14.     The Notice of Chapter 13 Bankruptcy Case expressly states:

> "Creditors Generally May Not Take Certain Actions … Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand payment …" *Id.*

> This provision, commonly known as the Automatic Stay, prohibits any attempt to collect a debt included in bankruptcy. *See* 11 U.S.C. §362.

15.     Plaintiff's Chapter 13 plan proposed to treat RCS's claim as follows:

> "Debtors are surrendering the real property located at 32290 Monte Vista Road, Cathedral City, California to Residential Credit Solutions, Inc. and Chase Home Mortgage in full satisfaction of their claims." *Id.*

16.     On September 27, 2013, Plaintiff filed a modified Chapter 13 plan. It afforded RCS's claim the same treatment as the original Chapter 13 plan. RCS received notice of the

modified plan on September 29, 2013. *See* Exhibit D, a true and correct copy of the modified Chapter 13 plan and Certificate of Notice.

17.     On October 4, 2013, the modified Chapter 13 plan was confirmed by the Honorable Judge Bruce W. Black.

18.     On December 13, 2013, RCS, through its counsel Codilis & Associates P.C., filed its appearance and request for notices. *See* Exhibit E, a true and correct copy of RCS's appearance.

19.     On January 7, 2014, RCS filed its motion for relief from the automatic stay with regard to the subject property. *See* Exhibit F, a true and correct copy of RCS's motion for relief from the automatic stay (without exhibits).

20.     On January 17, 2014, RCS's motion for relief from the automatic stay was granted.

21.     Plaintiff fully performed her duties as set forth in her confirmed Chapter 13 plan.

22.     On January 6, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the RCS debt ("subject debt"). *See* Exhibit G, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon all Defendants.

23.     The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the Debtor … The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged." *Id* at p. 2.

24.     On January 8, 2015, the BNC served Defendants with the Order of Discharge. *Id*.

25.     Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction, thus prohibiting any acts to collect upon the subject debt by RCS.

26.     Plaintiff's personal liability on the subject debt was extinguished via her bankruptcy discharge, thus terminating the business relationship with RCS.

27.     At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of a cellular telephone. Plaintiff is and has always been financially responsible for this cellular phone and its services.

28.     Despite Plaintiff's bankruptcy filing, RCS continued to attempt to collect the subject debt.

29.     Specifically, between August 16, 2013 and August 30, 2014, RCS made no less than 87 calls to Plaintiff's cellular phone.

30.     RCS's phone harassment campaign and illegal collection activity have caused Plaintiff actual harm, including but not limited to, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish from believing her bankruptcy had no legal effect, increased usage of her telephone services, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone.

## CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES

31.     Because the Chapter 13 discharge "eliminates a debtor's legal obligation to pay," the credit reporting industry standards for reporting accounts discharged through Chapter 13 bankruptcy require reporting a balance and past due amount of zero. *See* Exhibit H, a true and correct copy of "Frequently Asked Questions and Answers 28," excerpted from the 2011 Consumer Data Industry Association's ("CDIA") Credit Reporting Resource Guide.

32.     After her discharge, Plaintiff discovered that her consumer credit file did not reflect the discharged status of the RCS account.

**Plaintiff's First Dispute to the CRAs**

33.     On or about January 26, 2015, Plaintiff sent a written dispute to the credit report agencies ("CRAs"), including Equifax, requesting that her credit file be updated to reflect the zero balance and discharged status of all accounts discharged in her bankruptcy ("first dispute"). Plaintiff attached the relevant bankruptcy documents to her first dispute. *See* Group Exhibit I, a true and correct copy of Plaintiff's first dispute to the CRAs.

34.     Among other things, Plaintiff's first dispute stated the following:

   a.   "I am enclosing a copy of the Order Discharging Debtor;"
   b.   "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c.   "Report a current balance of '0'" on all discharged accounts;
   d.    "I request that you forward this letter, and the enclosures, to each of the creditors listed above." *Id*.

35.     Plaintiff sent her first dispute to Equifax via certified mail, return-receipt requested. *Id.*

36.     Upon information and belief, RCS received notice of Plaintiff's first dispute and enclosures from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

**Equifax's Response**

37.     On February 20, 2015, Equifax responded to Plaintiff's first dispute. It stated that the RCS account was "reporting included in bankruptcy." *See* Exhibit J, a true and correct copy of Equifax's February 20, 2015 response to Plaintiff's first dispute.

38.     Despite Equifax's representation that the subject debt was reporting as "included in bankruptcy," the RCS trade line was reporting a past due amount of $8,926.00, a scheduled

payment amount of $957, and post-bankruptcy filing late payments. By virtue of her confirmed plan and discharge, Plaintiff owed no past due amount or scheduled payment. Moreover, there is no notation of Plaintiff's discharge and there should be no missed payments reported during the time that Plaintiff's bankruptcy was open. *Id*. [1]

### Plaintiff's Second Dispute to Equifax

39.     On May 7, 2015, Plaintiff sent a second written dispute to Equifax ("second dispute"). Again, Plaintiff included her relevant bankruptcy documents to support her dispute. *See* Exhibit K, a true and correct copy of Plaintiff's second dispute.

40.     Plaintiff's second dispute specifically requested that Equifax reinvestigate the RCS account. Her dispute requested that the RCS account be marked "discharged" and report a $0 balance with no past due amounts. *Id.*

41.     Upon information and belief, RCS received notice of Plaintiff's second dispute and enclosures from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

### Equifax's Response to Plaintiff's Second Dispute Letter

42.     On May 26, 2015, Equifax responded to Plaintiff's second dispute. It stated, "Please be advised that account included in bankruptcy will remain on file seven years from the date of last activity." *See* Exhibit L, a true and correct copy of Equifax's May 26, 2015 response.

43.     The RCS trade line remained unchanged and was still reporting a past due amount of $8,926.00, a scheduled payment amount of $957, and post-bankruptcy filing late payments. By virtue of her confirmed plan and discharge, Plaintiff owed no past due amount or scheduled

---

[1] Credit reporting industry standards require that no late payments are reported in the months following the filing of a Chapter 13 bankruptcy. *See* Exhibit H.

payment. Moreover, there is no notation of Plaintiff's discharge and there should be no missed payments reported during the time that her bankruptcy was open. *Id.*

### Equifax and RCS's Continued Harm Caused by Inaccurate Credit Reporting

44.    Plaintiff filed her Chapter 13 bankruptcy over two years ago, seeking a fresh start in life. Since then she has taken diligent steps to rebuild her credit.

45.    Defendants' inaccurate credit reporting has thwarted Plaintiff's efforts to do so.

46.    Due to Defendants' inaccurate credit reporting, Plaintiff will pay more for the extension of credit, homeowner's/renter's insurance, auto insurance, among others.

47.    As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of the ability to purchase and benefit from a line credit, the loss of time and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, and monitoring her credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

48.    RCS deliberately reported inaccurate information to the CRAs as a means to coerce Plaintiff into paying the discharged debt because RCS knew that the inaccurate reporting of the mortgage account will have a significant impact on Plaintiff's ability to obtain credit.

49.    Equifax equally knew that the subject debt was discharged, but continued to report the inaccurate information provided by RCS.

50.    The ongoing refusal of RCS to correct the inaccurate information, along with Equifax's reporting of the same, amounts to willful conduct in violation of the FCRA.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## (AGAINST EQUIFAX)

51.     Plaintiff realleges and reincorporates paragraphs 1 through 50 above as if fully set out herein.

52.     Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit files it published and maintained concerning Plaintiff—it received Plaintiff's bankruptcy information, but failed to update Plaintiff's credit file accordingly.

53.     Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and to subsequently delete or correct the information in Plaintiff's credit report.

54.     Had the Equifax taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that the subject debt was in fact discharged in bankruptcy. Not only did Equifax receive all notices and information relating to Plaintiff's bankruptcy, Plaintiff further provided Equifax with her bankruptcy information in both of her disputes.

55.     Equifax violated 15 U.S.C. §1681i(a)(5)(A) by failing to delete or modify the inaccurate information which was the subject of Plaintiff's disputes.

56.     Equifax violated 15 U.S.C. §1681i(a)(5)(B) by re-reporting the inaccurate information without certification from RCS that the information was complete and accurate, and without sending notice of the re-insertion to Plaintiff.

57.     Equifax violated 15 U.S.C. §1681i(a)(5)(C) by failing to maintain reasonable procedures to prevent the reappearance of inaccurate information.

58.     As pled above, Plaintiff has suffered various types of damage as a result of the conduct, actions, and inaction of Equifax.

9

59.     As pled above, the conduct, actions, and inaction of Equifax was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

WHEREFORE, Plaintiff, Amanda Tucker, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.     declaring that the practices complained of herein are unlawful and violate the aforementioned statute;

b.     ordering the deletion or modification of all adverse credit reporting relating to the subject debt;

c.     awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.     awarding Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.     awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.     awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. 1681o; and

g.     awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## (AGAINST RCS)

60.     Plaintiff realleges and reincorporates paragraphs 1 through 50 above as if fully set out herein.

61.     RCS violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving the requests for investigation from Equifax.

62.     Had RCS taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that the subject debt was in fact discharged. RCS had notice of Plaintiff's bankruptcy discharge by virtue of its receipt of the BNC notices and through the Plaintiff's disputes.

63.     Furthermore, RCS had actual notice of all information relating to Plaintiff's bankruptcy through its active participation in Plaintiff's bankruptcy case.

64.     RCS violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax relating to Plaintiff's disputes.

65.     RCS violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to correct its trade line as reported to Equifax.

66.     RCS violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the incorrect information, with respect to the subject debt.

67.     As pled above, Plaintiff has suffered various types of damage as a result of the conduct, actions, and inaction of RCS.

68.     As pled above, the conduct, actions, and inaction of RCS was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

69.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from RCS in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, Amanda Tucker, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.      declaring that the practices complained of herein are unlawful and violate the aforementioned statute;

b.   ordering the deletion of all adverse credit reporting relating to the pre-petition debt;

c.   awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.   awarding Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.   awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.   awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. 1681o; and

g.   awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III - VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (AGAINST RCS)

70.   Plaintiff repeats and realleges paragraphs 1 through 50 as though fully set forth herein.

71.   The TCPA prohibits calling persons on their cell phone using an automatic telephone dialing system ("ATDS"). 47 U.S.C. §227(b)(1)(iii). The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

72.   Upon information and belief, RCS used a predictive dialing system to place calls to Plaintiff.

73.   "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce

numbers and dial those numbers at random, in sequential order, or from a database of numbers."
*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

74.     The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

75.     RCS violated the TCPA by placing no less than 87 calls to Plaintiff's cellular phone using an ATDS without her consent. Any prior consent was revoked by virtue of Plaintiff's bankruptcy filing and Plaintiff's verbal revocation.

76.     As pled in paragraphs 28-30, Plaintiff was harmed by RCS's collection calls to her cellular phone.

77.     Pursuant to 47 U.S.C. §227(b)(3)(B), RCS is liable to Plaintiff for at least $500 per telephone call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), RCS's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is entitled under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff, Amanda Tucker, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.     declaring that the practices complained of herein are unlawful and violate the aforementioned statute;

b.     awarding Plaintiff damages of at least $500 per phone call for the underlying TCPA violations pursuant to 47 U.S.C. §227(b)(3)(B);

c.     awarding Plaintiff treble damages pursuant to 47 U.S.C. §227(b)(3)(C); and

d.     awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT IV - VIOLATIONS OF THE ILLINOIS**
**CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(Against RCS)**

78.     Plaintiff repeats and realleges paragraphs 1 through 50 as though fully set forth herein.

79.     Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/1(c) and (e), respectively.

80.     RCS engaged in commerce in the State of Illinois with regard to Plaintiff, the subject property, and the subject loan. RCS specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in its regular course of business. *See* 815 ILCS 505/1(f).

81.     ICFA broadly prohibits unfair and deceptive acts and business practices:

   Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2

82.     RCS's attempts to collect upon the subject debt, which was duly scheduled in Plaintiff's bankruptcy and ultimately discharged, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not collectable at the time the demands for payment were made.

83.     It was unfair for RCS to seek to collect a debt included in bankruptcy from Plaintiff through phone calls to her cell phone.

14

84. It was unfair for RCS to attempt to induce the Plaintiff into making payments on a uncollectible debt by repeatedly placing harassing collection calls to the Plaintiff's cellular phone.

85. It was unfair for RCS to contact Plaintiff directly knowing that she was represented by an attorney.

86. RCS intended that the Plaintiff rely on its unfair acts and the Plaintiff did in fact rely on the unfair acts to her detriment as she was led to believe that her bankruptcy had no legal effect.

87. RCS bullied the Plaintiff into near submission with perpetual unfair and deceptive conduct through lies, harassment, and deception regarding the collectability of the subject debt.

88. As pled above, Plaintiff was harmed by RCS's conduct.

89. An award of punitive damages is appropriate because RCS's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the phone calls.

WHEREFORE, Plaintiff, Amanda Tucker, respectfully requests that this Honorable Court enter judgment in her favor as follows:

e. declaring that the practices complained of herein are unlawful and violate the aforementioned statute;

f. awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

g. awarding the Plaintiff costs and reasonable attorney fees pursuant to 815 ILCS 505/10a(c); and

h. awarding any other relief as this Honorable Court deems just and appropriate.

15

Dated: November 30, 2015          Respectfully Submitted,

                                /s/ Mohammed O. Badwan
                                Mohammed O. Badwan, Esq. ARDC#6299011
                                *Counsel for Plaintiff*
                                Sulaiman Law Group, LTD
                                900 Jorie Blvd, Ste 150
                                Oak Brook, IL 60523
                                Phone (630)575-8181